UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>JOSE MARIA RIVERA,<br><br>Defendant. | CASE NO. 2:24-cr-00135-TL<br><br>ORDER ON MOTION TO SUPPRESS |

This matter is before the Court on Defendant Jose Maria Rivera's Motion to Suppress. Dkt. No. 47. Having considered the Government's Response (Dkt. No. 50), Mr. Rivera's Reply (Dkt. No. 54), and the relevant record, and finding oral argument unnecessary, *see* CrR 12(b)(12), the Court DENIES Mr. Rivera's motion.

### I. BACKGROUND

The following summary comes from the Parties' briefing and attached exhibits.

This matter arises from the arrest of three individuals resulting from a controlled purchase of methamphetamine by two confidential sources, coordinated by investigators with the

ORDER ON MOTION TO SUPPRESS - 1

Drug and Enforcement Agency ("DEA") and Homeland Security Investigations ("HSI"). Dkt. No. 47-1 at 2.

On July 30, 2024, Mr. Rivera arrived at the parking lot of a Fred Meyer in Federal Way, Washington, for a prearranged meeting with a confidential source. *Id.* at 2–3. The confidential source then entered Mr. Rivera's vehicle and "visually identified what appeared to be a black bag with three wrapped packages of narcotics." *Id.* at 3. Agents then initiated Mr. Rivera's arrest. *Id.* Mr. Rivera "believes, to the best of his recollection, that he told the agents almost immediately after his arrest, and prior to receiving any *Miranda* warnings, that he wanted to speak to a lawyer before answering any questions." Dkt. No. 47 at 2 (cleaned up).

During the initial arrest, but prior to receiving any *Miranda* warnings, Mr. Rivera was called out of his vehicle and asked if the vehicle contained anything that posed a danger to officers. Dkt. No. 47-1 at 9. Mr. Rivera allegedly stated at that time that there were no weapons inside the vehicle, but there was a bag inside the vehicle. *Id.* He allegedly told HSI Special Agent ("SA") McPherson that "[t]hey always tell me, and they've told me hundreds of times not to look in the bag." *Id.*

Approximately 10 minutes after agents initiated Mr. Rivera's arrest, DEA SA McDowell read Mr. Rivera his *Miranda* rights. *Id.* at 8; *see also id.* at 3. The Parties agree that following the reading of his *Miranda* rights, Mr. Rivera "advised investigators that he wished to speak with an attorney before giving any statements related to his involvement in the takedown operation." *Id.* at 8. Mr. Rivera was then seated in DEA Group Supervisor ("GS") Wetteland's vehicle while agents processed the scene. *Id.*

Following the reading of Mr. Rivera's *Miranda* rights and Mr. Rivera's request for an attorney, the Government contends that its investigators did not ask him any questions related to the incident. *See* Dkt. No. 50 at 2; *see also* Dkt. No. 47-1 at 8. However, Mr. Rivera contends

ORDER ON MOTION TO SUPPRESS - 2

1  that after he invoked his right to counsel, "the agents 1) continued to talk to him about this being

2  his opportunity to cooperate and help himself, and 2) perhaps without asking direct questions,

3  continued to talk to Mr. Rivera about how he must have had knowledge that he was carrying

4  drugs." Dkt. No. 47 at 3.

5      While Mr. Rivera was seated in GS Wetteland's vehicle, he made several utterances to

6  GS Wetteland and SA McDowell, including statements that "he was merely a paid driver earning

7  several hundred dollars per trip," that he was "'always' instructed to never look inside the

8  packages he transported," and that "he had no idea what was inside the packages he transported

9  on this date." Dkt. No. 47-1 at 8. The Government asserts Mr. Rivera made these statements

10 "spontaneously." Dkt. No. 50 at 2; *see also* Dkt. No. 47-1 at 8. Mr. Rivera contends that these

11 statements were made only after continued communication from the agents. Dkt. No. 47 at 3.

12     Mr. Rivera now moves to suppress any statements that he made after his arrest on July

13 30, 2024, arguing that he was interrogated while he was in custody and after he had invoked his

14 right to counsel under the Fifth Amendment. *See* Dkt. No. 47 at 7; Dkt. No. 54 at 6.

15     **II.    LEGAL STANDARD**

16     "The Fifth Amendment guarantees that '[n]o person . . . shall be compelled in any

17 criminal case to be a witness against himself.'" *United States v. Wells*, 55 F.4th 784, 792 (9th

18 Cir. 2022) (alteration in original) (quoting U.S. Const. amend. V). "Although the right against

19 self-incrimination is a quintessential 'trial right of criminal defendants,' its protection has been

20 extended to 'bar[] the government from engaging in certain pretrial conduct.'" *Id.* (quoting

21 *Chavez v. Robinson*, 12 F.4th 978, 985 (9th Cir. 2021)). Relevant here, "the Fifth Amendment

22 prohibits the government from 'compelling a person to make incriminating statements (absent a

23 grant of immunity).'" *Id.* (quoting *Chavez*, 12 F.4th at 985). Accordingly, "[b]efore any

24 interrogation that occurs in a custodial setting, a suspect must be advised of his or her Fifth

ORDER ON MOTION TO SUPPRESS - 3

Amendment rights as required by *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966).'" *United States v. McKany*, 649 F. App'x 553, 554 (9th Cir. 2016) (cleaned up). And if a defendant requests counsel, "the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474. Statements obtained in violation of a person's Fifth Amendment rights must be suppressed. *Id.* at 444–45; *see also Jones v. Harrington*, 829 F.3d 1128, 1142 (9th Cir. 2016) ("The Supreme Court has repeatedly made clear that when a suspect simply and unambiguously says he wants to remain silent, police questioning must end. Under any reasonable interpretation of the facts, Jones simply and unambiguously invoked that right. Clearly established Supreme Court law required the suppression of Jones's interrogation.").

### III.    DISCUSSION

Mr. Rivera moves to suppress his alleged post-arrest statements and asserts that his request is supported by facts and argument in his motion "as well as those that which [sic] may be adduced at a[n evidentiary] hearing on the motion." Dkt. No. 47 at 1. Mr. Rivera argues, and the Government does not dispute, that he was in custody at the time of the alleged interrogation. *See* Dkt. No. 47 at 4–5; Dkt. No. 50 at 5. The Parties do dispute, however, whether Mr. Rivera was being interrogated at the time of his statements. *See* Dkt. No. 47 at 3; Dkt. No. 50 at 5.

"Interrogation is defined not only as express questioning but its 'functional equivalent.'" *United States v. Moreno-Flores*, 33 F.3d 1164, 1169 (9th Cir. 1994) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980)). "The functional equivalent of interrogation includes 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response.'" *Id.* (quoting *Innis*, 446 U.S. at 301). To determine whether questioning constitutes interrogation, the Court uses an objective test; while the officer's subjective intent is relevant, it is not decisive, as the focus is on the defendant's perceptions. *See id.* (citing *United States v. LaPierre*, 998 F.2d

1460, 1466–67 n.6 (9th Cir. 1993)). However, "the police are not held accountable for the unforeseeable results of their words or actions." *Id.* (citing *Innis*, 446 U.S. at 301–02).

Mr. Rivera alleges that after he invoked his right to counsel:

> [A]gents 1) continued to talk to him about this being his opportunity to cooperate and help himself, and 2) perhaps without asking direct questions, continued to talk to Mr. Rivera about how he must have had knowledge that he was carrying drugs. It was only after this continued communication from the agents that Mr. Rivera allegedly made some statements about his actions and level of knowledge about what was in the car.

Dkt. No. 47 at 3. Mr. Rivera argues that the statements by agents constituted an interrogation, because "one needs no more than common sense to understand how the agents' statements could lead to statements from Mr. Rivera." Dkt. No. 54 at 2. The Government contends that Mr. Rivera has failed to "state the precise nature of the alleged interrogation" or submit any evidence to the Court establishing a dispute of fact as to any statements by investigators. Dkt. No. 50 at 3–4.

The Court finds that Mr. Rivera does adequately state the precise nature of the alleged interrogation: that the agents continuing to talk to him about the opportunity to help himself by cooperating and asserting he had to know he was carrying drugs was the functional equivalent of an interrogation. The problem is that the only source of these allegations is Mr. Rivera's counsel's assertions in the motion. Mr. Rivera did not submit an affidavit or declaration with his motion attesting to these alleged facts. Nor did Mr. Rivera submit an affidavit or declaration with his reply after the Government specifically pointed out that the allegations in his motion "are general and unsupported by affidavits of personally knowledgeable witnesses." Dkt. No. 50 at 3. It is well established that arguments of counsel do not constitute evidence. *See Carillo-Gonzalez v. I.N.S.*, 353 F.3d 1077, 1079 (9th Cir. 2003). Arguments of Mr. Rivera's counsel cannot constitute evidence because counsel cannot act as a witness; he was not present at Mr. Rivera's arrest and, therefore, does not have personal knowledge of the facts asserted. *See United States v.*

ORDER ON MOTION TO SUPPRESS - 5

*Shayota*, No. CR15-264, 2016 WL 2771793, at *3 (N.D. Cal. May 12, 2016) ("Here, the allegations in the Motion are both general and unsupported by affidavits of personally knowledgeable witnesses. As noted [], the only evidence provided with the [defendants' m]otion is an attorney declaration.").

    Mr. Rivera argues that his motion alone is sufficient to shift the burden to the Government to show that it complied with *Miranda* (Dkt. No. 54 at 3–4)—and indeed, the Government does bear the burden of establishing compliance. *See United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984). But "[t]he Government will not be required to fulfill this burden . . . until the defendant sufficiently places factual allegations before the Court." *United States v. Moran-Garcia*, 783 F. Supp. 1266, 1268 (S.D. Cal. 1991). Here, Mr. Rivera fails to sufficiently place factual allegations before the Court in his motion as the only facts supporting his motion are provided by his counsel. Therefore, based on the papers alone, the Court must deny Mr. Rivera's motion.

    The next question then is whether Mr. Rivera is entitled to an evidentiary hearing to "adduce" further facts in support of his motion. "An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Toan Phuong Nghe*, 925 F. Supp. 2d 1142, 1147 (W.D. Wash. 2013) (quoting *United States v. McTiernan,* 695 F.3d 882, 891 (9th Cir. 2012)); *see also United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). In addition, under Local Criminal Rule 12(b)(1), where a motion "requires the consideration of facts not appearing of record, the movant shall also serve and file copies of all affidavits and photographic or documentary evidence presented in support of the motion." Mr. Rivera runs afoul of the rule by making several assertions of fact without providing supporting citations, declarations, or exhibits. *See United States v. Jefferson*, No. CR23-109,

2024 WL 4871371, at *3 (W.D. Wash. Nov. 22, 2024) (holding that defendant violated CrR 12(b)(1) where he made assertions of fact without providing supporting evidence); *Moran-Garcia*, 783 F. Supp. at 1267, 1274 (denying request for evidentiary hearing on motion to suppress statements where defendant had not filed an affidavit or declaration to support his motion).[1] In particular, Mr. Rivera's allegations about statements made by agents after he requested an attorney are not supported by any citation to the record or declarations or exhibits to his motion. Rather, the only support he provides is a DEA "Report of Investigation" that he attaches to his motion, which states that the agents did *not* ask him questions related to the incident after he stated he wanted to speak with an attorney. *See* Dkt. No. 47-1 at 8. Curiously, Mr. Rivera asserts that "government has sole practical control" of the record. Dkt. No. 54 at 1. But Mr. Rivera was present for his own arrest and should be able to provide an account of what transpired. Not much was required of Mr. Rivera to comply with CrR 12(b)(1)—he could have provided a simple declaration stating what his lawyer asserted in the motion but chose not to do so.

      Mr. Rivera's failure to provide any evidence in support of his motion is fatal to it. Having failed to "allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist," *McTiernan*, 695 F.3d at 891, the Court finds he is not entitled to an evidentiary hearing on his motion to suppress.

---

[1] *Moran-Garcia* involved the General Order of the Southern District of California, which states: "Where a criminal motion requires a predicate factual finding, the motion shall be supported by a declaration. . . . The court need not grant an evidentiary hearing where either party fails to properly support its motion or opposition." 783 F. Supp. at 1268. CrR 12(b)(1) similarly requires evidence be filed if "a motion requires the consideration of facts not appearing of record," but is not limited to requests for an evidentiary hearing.

## IV. CONCLUSION

Accordingly, Mr. Rivera's Motion to Suppress (Dkt. No. 47) is DENIED.

Dated this 14th day of March 2025.

Tana Lin
United States District Judge